**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| JACKIE M. CUNNINGHAM, in her capacity as personal representative of the Estate of Ronald Milhausen, | ) ) ) ) | |
| Plaintiff, | ) ) | 3:07-cv-08033 JWS |
| vs. | ) ) | ORDER AND OPINION |
| WORLD SAVINGS BANK, FSB, | ) ) | [Re: Motions at Dockets 81, 89, 90, and 110; Possible |
| Defendant. | ) ) ) | Settlement Conference and Scheduling Trial Date] |

## I.  MOTIONS PRESENTED

At docket 81, plaintiff Jackie M. Cunningham, in her capacity as personal

representative of the Estate of Ronald Milhausen, moves for summary judgment

pursuant to Federal Rule of Civil Procedure 56 on the issues of liability and double

damages.  At docket 88, defendant World Savings Bank, FSB opposes the motion.

Plaintiff replies at docket 94. At docket 90, defendant moves for summary judgment in

its favor on all claims asserted in plaintiff's amended complaint.  At docket 102, plaintiff

opposes defendant's motion.  Defendant replies at docket 109.  The parties requested

oral argument, but it would not assist the court.

At docket numbers 89 and 110, defendant moves pursuant to District of Arizona Local Rule 7.2(m)(2) to strike certain evidence attached to Plaintiff's Statement of Facts in Support of Her Motion for Summary Judgment Re: Liability and to Plaintiff's Responsive Statement of Facts in Opposition to World Savings Bank's Motion for Summary Judgment.  The court denies the motions to strike as moot because the court does not rely on any of the contested evidence in ruling on the parties' cross-motions for summary judgment.

## II.  BACKGROUND

The following facts are undisputed.  On March 24, 2004, Ronald Milhausen executed his Last Will and Testament, appointing Jackie M. Cunningham as personal representative of his estate.[1]  Mr. Milhausen, who was a resident of San Diego County, California, at the time he executed his will,[2] subsequently relocated to Arizona.

On November 30, 2004, Mr. Milhausen opened three accounts at World Savings Bank, FSB ("World Savings") in Prescott, Arizona: checking account number 693332983, and term savings account numbers 408345544 and 408346211 ("CD accounts").[3]  On the same day, Mr. Milhausen signed a multi-account signature card for the three accounts.  The multi-account signature card describes the ownership of the accounts as "individual" and states that "[u]pon the death of the owner the account

---

[1]Doc. 89-5 at pp. 40-43, 50.

[2]*Id.*

[3]Doc. 82 at p. 2, ¶ 1, doc. 89 at p. 2.

funds will be released to the legal representative of the owner's estate, or, if there is none, according to applicable law."[4]

On February 4, 2005, Mr. Milhausen and Anne Heinkel went to the World Savings branch in Prescott Valley and met with branch manager Mark Garman.[5]  At that time, Mr. Milhausen signed a Record Change Authorization ("RCA").  The RCA lists account numbers 408345544, 408346211, and 693332983 and states "Add Anne Heinkel As A Signer Accounts."[6]  The RCA form further states, "By initialing next to each change above and signing below, I/We authorize the changes."  Ronald Milhausen signed the RCA form but did not initial any changes.  On the same day, Mr. Milhausen and Ms. Heinkel both signed a signature card which lists checking account number 693332983 and identifies the ownership type as "Joint Tenancy."  The ownership description states,

> Joint Tenancy With Right of Survivorship.  This account is owned by the Accountholders named on the front of this card as joint tenants with right of survivorship.  All living owners have equal rights of withdrawal.  Upon the death of any owner, the funds in the account become the property of the surviving joint tenant(s), and the right of survivorship continues among the surviving owners.  Upon the death of any owner the survivor(s) agree to notify World at once.[7]

The signature card further states," By signing below, I confirm that we have received and agree that my/our accounts will be governed by the terms of the Customer Account Information booklet, the Account Features and Services brochure, and the passbooks (if

[4]Doc. 82-1 at p. 5.

[5]Doc. 82 at p. 3, doc. 89 at pp. 3, 15, doc. 89-1 at p. 2.

[6]Doc. 82-1 at p. 41.

[7]*Id.* at p. 43.

applicable) describing the accounts."[8]  The signature card does not list savings

accounts 408345544 and 408346211.

Mr. Milhausen died on March 4, 2005.  A notation on the signature card for

checking account 693332983 indicates that the checking account was closed on

March 29, 2005.[9]

On April 8, 2005, Ms. Cunningham traveled to Arizona to obtain a death

certificate and collect Mr. Milhausen's personal property.[10]  Ms. Cunningham met with

Ms. Heinkel in order to collect Mr. Milhausen's personal effects, which included some

World Savings account documents.  On April 14, 2005, Ms. Heinkel withdrew

$221,719.56 from CD account 408346211 and $92,492.01 from CD account

408345544, for a total of $314,211.57.[11]  On the same day, Ms. Heinkel deposited the

amount of $221,719.56 in account 411413032 and the amount of $92,492.01 in account

411412836.[12]

By letter dated April 19, 2005, Walter Pinkerton informed the World Savings

branch in Prescott that he had been retained by Jackie Cunningham, Successor

Trustee to the Ronald Milhausen Trust and Executor of Milhausen's will.  Mr. Pinkerton

requested World Savings to confirm the existence of accounts 693332982, 408346211,

and 408345544 and their current value because he needed to determine if it was

---

[8]*Id.*

[9]Doc. 82-1 at p. 43.

[10]Doc. 89 at p. 19, doc. 86-5 at p. 12.

[11]Doc. 82 at p. 6, ¶ 13, doc. 89 at p. 10 ¶ 13, doc. 89-4 at pp. 35 and 37.

[12]Doc. 82-1 at pp. 58-61.

necessary to probate the accounts or if they would simply pass to a named beneficiary.[13]  In a letter dated June 28, 2005, World Savings' Legal Coordinator responded that World Savings' records showed that accounts 693332982, 408346211, and 408345544 "are held in joint ownership with another individual and these accounts were closed by the surviving joint tenant."[14]  By letter dated July 5, 2005, Mr. Pinkerton requested copies of any documents supporting World Saving's position that Mr. Milhausen titled the three accounts as joint accounts with another individual.[15]

On July 18, 2005, Ms. Cunningham commenced probate proceedings for the estate of Ronald Milhausen in the Superior Court of California, County of San Diego.[16]  The petition for probate estimates the value of Mr. Milhausen's personal property as $300,000 and the value of his real property as $5,000.[17]  On December 12, 2005, Ms. Cunningham filed an Inventory and Appraisal of the Estate, stating that the estate consisted of a vacant lot in California Valley with a value of $8,000.  By order dated May 25, 2007, the California court approved the petition for final distribution and closed the administration of the estate.[18]

On February 22, 2007, Jackie Cunningham was appointed Personal Representative of the Estate of Ronald Milhausen in Superior Court of Arizona, Yavapai

---

[13]Doc. 89-7 at p. 2.

[14]*Id.* at p. 4.

[15]*Id.* at p. 6.

[16]*Id.* at p. 8.

[17]*Id.* at p. 9.

[18]*Id.* at pp. 17-20.

County.[19]  On April 20, 2007, Ms. Cunningham, in her capacity as personal representative of the Estate of Ronald Milhausen, filed a "Petition to Compel World Savings to Restore Estate Assets to Personal Representative" in Superior Court of Arizona.[20]  In her petition, Cunningham alleged "World Savings breached a duty of care owed to the Estate of Ronald L. Milhausen when it wrongfully and negligently disbursed the funds held in the CD Accounts to Anne Heinkel on April 14, 2005."[21]  World Savings Bank removed this matter to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  This court has construed Ms. Cunningham's petition as a complaint.

On February 11, 2008, Cunningham requested leave to file an amended complaint, which the court granted by order dated June 3, 2008.  Cunningham's amended complaint alleges that World Savings violated "the account terms and deposit agreement between World Savings and Ronald L. Milhausen" and "breached a duty of care owed to the Estate of Ronald L. Milhausen when it wrongfully and negligently disbursed the funds held in the CD Accounts to Anne Heinkel on April 14, 2005."[22]  The amended complaint also alleges that World Savings' distribution of the funds in the CD accounts "was a conveyance or disposition of property belonging to the Estate of Ronald L. Milhausen in violation of A.R.S. § 14-3709."[23]

---

[19]Doc. 82-1 at p. 7.

[20]Doc. 1-1.

[21]Doc. 1-1 at p. 6.

[22]Doc. 45 at p. 6.

[23]*Id.*

The amended complaint further requests the court to 1) order World Savings to pay "a sum equal to the full amount of the CD Accounts wrongfully disbursed to Anne Heinkel, plus prejudgment and post judgment interest according to law, to the Personal Representative of the Estate of Ronald L. Milhausen"; 2) "[e]nter a judgment pursuant to A.R.S. § 14-3709 for double the value of the property"; and 3) award Cunningham her reasonable attorney's fees under A.R.S. § 12-341.01(A).

Ms. Cunningham now requests an order granting her summary judgment on the issues of liability and double damages. World Savings moves for summary judgment in its favor on all claims asserted in Cunningham's first amended complaint.

### III.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[24] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[25] Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue of fact exists by presenting evidence indicating that certain facts are disputed so that a fact-finder must resolve the dispute at trial.[26] The court views this evidence in the light most favorable to

---

[24]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[25]*Id.* at 325.

[26]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

the nonmoving party and draws all justifiable inferences from it in favor of the nonmoving party.[27]

<h2 style="text-align:center">IV.  DISCUSSION</h2>

Ms. Cunningham argues that she is entitled to summary judgment on her claims that "(1) in her representative capacity, she was entitled to distribution of the proceeds of two CD Accounts held in the name of Ronald Milhausen . . . at the time of his death; and (2) she is entitled to an award of double damages pursuant to A.R.S. § 14-3709."[28] Ms. Cunningham further contends that upon a grant of summary judgment, she should be awarded her reasonable attorney's fees and costs pursuant to A.R.S. § 14-3709, A.R.S. § 12-341.01(A), or both.

World Savings opposes Ms. Cunningham's motion and argues that it is entitled to summary judgment on all claims asserted in her first amended complaint.  World Savings first argues that Ms. Cunningham's claims are time barred, that Cunningham lacks standing to assert the claims as a "personal representative," and that Cunningham is judicially estopped from asserting any claims against World Savings because she did not disclose them in the California probate proceeding.  World Savings next argues that, assuming Ms. Cunningham's claims survive these affirmative defenses, the claims fail on the merits because "World Savings properly titled all three accounts . . . jointly in the

---

[27] *Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006) (quoting *Olson v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004)).

[28] Doc. 81 at p. 2.

names of Mr. Milhausen and Anne Heinkel at the express, written request of Mr. Milhausen before he passed away."[29]

The court first considers whether World Savings is entitled to summary judgment on any of its affirmative defenses. World Savings argues that Cunningham's claims are time barred because they are subject to the one-year contractual limitations period set forth in the Customer Account Information ("CAI") booklet in effect at the time Mr. Milhausen held his accounts at World Savings. The CAI states in pertinent part, "An action or proceeding by you to enforce any obligation, duty, or right arising under this agreement or by law with respect to your account or any account service must be commenced within one year after the cause of action accrues."[30] The CAI also states, "Throughout this handbook, the words 'you,' 'your,' and 'yours' refer to the owners and authorized signers on the account."[31] Based on the plain language of the CAI, it is not clear that the one-year limitations period applies to claims brought by a personal representative of a deceased account owner's estate. Moreover, World Savings has not briefed the issue of how any applicable probate statutes relate to the limitations period set forth in the CAI. Accordingly, World Savings has failed to establish as a matter of law that Ms. Cunningham's claims are time barred.

World Savings next argues that Ms. Cunningham lacks standing as a personal representative to assert any claims against Wold Savings because any claims against

---

[29]Doc. 90 at p. 2.

[30]Doc. 89-3 at p. 50.

[31]*Id.* at p. 8.

World Savings arising from the CD accounts were assigned to Ms. Cunningham in her individual capacity as a result of the final judgment entered by the California probate court.[32]  World Savings' argument is unavailing.  It is undisputed Ms. Cunningham was appointed personal representative of the Estate of Ronald L. Milhausen in Superior Court of Arizona, Yavapai County, on February 22, 2007,[33] and that Cunningham's claims in this action are brought in her capacity as personal representative of Mr. Milhausen's estate in probate proceedings before the Superior Court of Arizona, not in her capacity as personal representative in probate proceedings before the Superior Court of California.   Moreover, the final judgment entered by the California probate court could not have assigned any claims arising from the CD accounts to Ms. Cunningham in her individual capacity because those claims were not before the California court.  Rather, Ms. Cunningham commenced ancillary probate proceedings in Arizona to recover assets in this jurisdiction.  World Savings' argument based on judicial estoppel fails for the same reason.

Having determined that World Savings is not entitled to summary judgment on its affirmative defenses, the court considers the merits of Ms. Cunningham's claims. Cunningham first argues that she is entitled to summary judgment on her claim that in her capacity as personal representative, "she was entitled to distribution of the proceeds of two CD accounts held in the name of Ronald Milhausen at World Savings Bank at the

---

[32]Doc. 88 at p. 10.

[33]Doc. 89 at p. 2.

time of his death."[34]  World Savings argues that it is entitled to summary judgment on the issue of liability "because there is no genuine issue of material fact that World Savings properly titled both savings accounts jointly in Mr. Milhausen and Ms. Heinkel at his express, written request before he passed away."[35]  Ms. Cunningham contends, on the other hand, that "neither Mr. Milhausen nor [World Savings] performed the acts necessary to convert the CD accounts from single party accounts to multiple party accounts.  Therefore, the CD accounts remained individual accounts, payable to the 'legal representative of the owner's estate.'"[36]

The evidence submitted by the parties shows that genuine issues of fact exist as to whether Mr. Milhausen intended to change his CD accounts from individual to joint accounts and whether, assuming he intended to change his CD accounts to joint, the change of ownership was effectively executed.  For example, as evidence that Mr. Milhausen did not intend to change the ownership of his accounts from individual to joint, Ms. Cunningham filed an e-mail sent by branch manager Mark Garman on July 23, 2005, to counsel for World Savings, in which he summarized what transpired on February 4, 2005:

> Mr. Milhausen and Anne Heinkel came into the branch on February 22, 2005 together.  They requested me for assistance . . . [Mr. Milhausen] told me that he had severe infections in his leg do [sic] to diabetes.  He was told that he needed to be placed on medication and that he would be unable to walk and possibly die soon.  He stated that physicians could not amputate his legs.  He indicated to me that he

---

[34]Doc. 81 at p. 2.

[35]Doc. 90 at p. 9.

[36]Doc. 81 at p. 7.

wanted to add Anne Heinkel to his accounts so that she could do his banking and monthly expenses for him. He also told me that he wanted only Anne on the accounts because she was like a mother to him. I updated the file and added Anne to the accounts. Mr. Milhausen and Mrs. Heinkel left and that was the last time I saw Mr. Milhausen before he passed away.[37]

In support of its argument that Mr. Milhausen intended to change the ownership of all three accounts to joint, World Savings attached Mr. Garman's declaration dated July 1, 2009. In his declaration, Garman states,

Based on my conversation with Mr. Milhausen on February 4, 2005, it was my understanding that Mr. Milhausen wanted to change the ownership of all three of his accounts at World Savings. Specifically, it was my understanding that Mr. Milhausen wanted to add Ms. Heinkel as a joint owner of all three accounts - the checking and two savings accounts.[38]

The evidence submitted by the parties demonstrates that a genuine issue of fact exists as to whether Mr. Milhausen intended to change the ownership of all three accounts from individual to joint tenancy with rights of survivorship.

The evidence also demonstrates that genuine issues of material fact exist as to whether a change in the ownership of the CD accounts was effected. As a general rule under Arizona state law, "on the death of a party, sums on deposit in a multiple party account belong to the surviving party or parties."[39] However, sums on deposit "in a multiple party account that, by the terms of the account, is without right of survivorship, are not affected by the death of a party."[40] A.R.S. § 14-6213(a) further provides,

---

[37]Doc. 82-1 at p. 12.

[38]Doc. 89-1 at p. 4.

[39]A.R.S. § 14-6212(A).

[40]A.R.S. § 14-6212(C).

Rights at death under section 14-6212 are determined by the type of account at the death of a party.  The type of account may be altered by written notice given by a party to the financial institution to change the type of account or to stop or vary payment under the terms of the account.  The notice shall be signed by a party and received by the financial institution during the party's lifetime.

World Savings' documents also control changes in account ownership.  The CAI in effect at all relevant times states in pertinent part, "This handbook, your signature card, your passbook if applicable, and the Savings and Checking brochures which you receive when you open your account constitute our Agreement with you. . . ."[41] The CIA also states, "Your signature card reflects who is authorized to make withdrawals and give us instructions regarding your account.  Unless otherwise indicated on your signature card, any one of the authorized signers may act alone in writing checks or giving us instructions."[42]  The CAI section addressing changes in account ownership states,

You agree to notify us in writing of any change in your name, address, business capacity (e.g., sole proprietor to corporation), or the authorized signers on your account.  We may require a new signature card before any change in ownership or authorized signer(s) becomes effective.[43]

Ms. Cunningham argues that any purported change of ownership was not properly effected by the RCA because Mr. Milhausen did not initial "next to each change" as required by the RCA form.  Ms. Cunningham further argues that the signature card signed by Mr. Milhausen on February 4, 2005, only changed the

---

[41]Doc. 89-3 at p. 8.

[42]*Id.* at p. 13.

[43]*Id.* at p. 46.

ownership of the checking account from individual to joint tenancy with right of survivorship.  In support of her argument that a change of ownership was not properly effected, Ms. Cunningham attaches a signature card dated February 4, 2005, which lists the "Account Number(s) Governed by this Agreement" as account 693332963, Mr. Milhausen's checking account.  The signature card was signed by both Mr. Milhausen and Ms. Heinkel and describes the ownership of the account as "Joint Tenancy with Right of Survivorship."[44]  The signature card does not reference the two CD accounts.

In its opposition, World Savings argues that Mr. Milhausen changed the ownership of his accounts by signing the RCA and thus did not have to sign a signature card to change ownership for the CD Accounts.  World Savings further argues that even assuming "it was necessary for Mr. Milhausen to sign a second signature card for the savings accounts, there is, at a minimum, a genuine issue of material fact as to whether Mr. Milhausen signed such a card."[45]  In support of its argument, World Bank relies on Mr. Garman's July 1, 2009, declaration, which states in pertinent part,

> 29.  The account signature card that is attached as Exhibit "C" to this Declaration was prepared as part of the transaction with Mr. Milhausen on February 4, 2005.  The account listed on this card is the checking account (account no. 693332983).

> 30.  I recall that a second signature card was prepared as part of the transaction with Mr. Milhausen on February 4, 2005.  This signature card listed the account numbers for all three accounts (the checking account and two savings accounts).  This signature card identified these accounts as being owned by Mr. Milhausen and Ms. Heinkel as joint

---

[44]Doc. 82-1 at p. 43.

[45]Doc. 88 at p. 19.

tenants.  It was also signed by both Mr. Milhausen and Ms. Heinkel.  I remember seeing this signature card both on and after February 4, 2005.[46]

However, in his deposition on January 22, 2009, Mr. Garman stated that he did not recall the last time he saw the alleged second signature card nor whether he had anything to do with the preparation of the second signature card.[47]  The above evidence shows that a genuine issue of fact exists as to whether any purported change of ownership of the CD accounts was legally effected.  Accordingly, neither party is entitled to summary judgment on Ms. Cunningham's claim that in her capacity as personal representative, "she was entitled to distribution of the proceeds of two CD Accounts held in the name of Ronald Milhausen at World Savings Bank at the time of his death."[48]

Ms. Cunningham also moves for summary judgment on her claim that she is entitled to double damages pursuant to A.R.S. § 14-3709.  The language of § 14-3709,

> . . . sets up a process whereby a personal representative may commence an "action to recover possession of property," authorized by subsection (A).  Before the trial on that action, subsection (D) authorizes a process by which the personal representative may obtain an order of disclosure against an individual believed to have wrongfully "concealed, embezzled, conveyed or disposed of" property. § 14-3709(D).  That order, if obtained may be used in the subsection (A) trial to recover the property.  At trial, the personal representative may obtain a judgment for double the value of the property in the event it succeeds on the action to recover, including proof of the wrongful conduct which formed the basis of the order of disclosure."[49]

---

[46]Doc. 89-1 at pp. 7-8.

[47]Doc. 82-1 at pp. 16, 20.

[48]Doc. 81 at p. 2.

[49]*In re Estate of Newman*, 196 P.3d 863, 869-70 (Ariz. App. Div. 1, 2008).

Citing *In re Estate of Newman*, World Savings argues that Ms. Cunningham's claim under A.R.S. § 14-3709(D) fails because she has not obtained an order of disclosure. In *Newman*, the court held that "double damages pursuant to A.R.S. § 14-3709(D) may be awarded only after issuance of an order of disclosure as to the property or conduct at issue, but that no violation of the order is required before double damages may be imposed."[50] The court further held that the order of disclosure "is prima facie evidence of the wrongful conduct or bad faith set forth in the order." "[T]he personal representative then must prove at trial . . . that the wrongful conduct took place" in order to obtain double damages.[51] While the Arizona statute sets forth the substantive right to double damages when "a person has concealed, embezzled, conveyed or disposed of any property of a decedent," this court is not bound by all of the procedures set forth in the Arizona statute. It is long settled that "federal courts sitting in diversity apply state substantive law and federal procedural law."[52]

Because genuine issues of fact exist as to whether World Savings wrongfully concealed or conveyed the CD accounts at issue, the court will deny the parties' cross motions for summary judgment on the issue of double damages. In light of the fact that the evidence relevant to entitlement to double damages is closely related to the evidence relevant to liability, the court will hear the evidence relevant to double

---

[50] *Newman*, 196 P.3d at 872.

[51] *Id.*

[52] *Snead v. Metropolitan Property & Casualty Ins.*, 237 F.3d 1080, 1090 (9th Cir. 2001) (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426 (1996)).

damages at the beginning of the trial in this action and will make a ruling as to

Ms. Cunningham's entitlement to an order of disclosure prior to ruling on the merits of

her claims.

World Savings also moves for summary judgment on Ms. Cunningham's claim

that World Savings breached a duty of care owed to the Estate of Ronald L. Milhausen

by negligently disbursing the funds in the CD accounts to Ms. Heinkel. World Savings

first argues that Ms. Cunningham's negligence claim fails as a matter of law, because it

did not owe plaintiff any duty of care beyond performing under the account agreements.

As discussed above, material questions of fact exist as to whether the accounts at issue

were actually individual accounts or joint accounts at the time of Mr. Milhausen's death.

The terms of the CAI provide that "upon the death of the owner of any individually

owned account, the funds will be released to the legal representative of the decedent's

estate, or, if there is none, according to applicable law."[53]  The CAI further provides,

"Unless we agree to a different arrangement, accounts opened by two or more

individuals will be considered a 'joint tenancy account with right of survivorship.'"[54]  Until

the court determines at trial whether the accounts at issue were individual or joint

accounts, it cannot determine whether World Savings performed its duty under the

account agreements.

Moreover, at this point, it is unclear whether Mrs. Cunningham's negligence claim

alleges a breach of a duty which arises under the account agreements or whether it

---

[53]Doc. 89-3 at p. 11.

[54]*Id.*

arises from the breach of the duty to exercise ordinary care. Ms. Cunningham's complaint alleges that "World Savings breached a duty of care owed to the Estate of Ronald L. Milhausen when it wrongfully and negligently disbursed the funds held in the CD Accounts to Anne Heinkel on April 14, 2005."[55] World Bank suggests that it did not owe plaintiff any duty of care beyond performing under the account agreements. However, in her opposition brief, Ms. Cunningham argues that "a determination must be made whether World exercised its existing duty of exercising ordinary care."[56] Although Ms. Cunningham does not cite controlling authority supporting a common law negligence claim based on facts similar to those in this action, there is controlling authority for the proposition that a bank owes customers the duty to exercise ordinary or reasonable care.[57] Whether a bank exercised ordinary care is "a fact issue normally precluding summary judgment."[58]

World Savings next argues that Cunningham's negligence claim is barred by the economic loss rule. "Generally, under the 'economic loss' rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses

---

[55] Doc. 45 at p. 6.

[56] Doc. 102 at p. 16.

[57] *See, e.g., Leather Mfrs. Nat. Bank v. Morgan*, 117 U.S. 96, 115 (1886) ("In their relations with depositors, banks are held, as they ought to be, to rigid responsibility."); *Valley Bank of Nevada v. JER Management Corp.*, 719 P.2d 301, 308 (Ariz. App. 1986) (concluding that nothing in the record established that bank breached duty to exercise care to protect appellants interests); *Berthot v. Security Pacific Bank of Arizona*, 823 P.2d 1326, 1331 (Ariz. App. 1991) (recognizing that "for an action based on common law negligence, the plaintiff bears the burden of proving negligence on the part of a bank").

[58] *Schoenfelder v. Arizona Bank*, 796 P.2d 881, 891 (Ariz. 1990).

in tort.  Instead, the claimant is limited to recovery under the law of contract."[59]  The rule

is based on the theory that contract law and tort law protect distinct interests.

"Generally, contract law enforces the expectancy interests between contracting parties

and provides redress for parties who fail to receive the benefit of their bargain. . . . Tort

law, in contrast, seeks to protect the public from harm to persons and property."[60]  "The

economic loss doctrine, however, is not a 'blanket disallowance of tort recovery for

economic losses.'"[61]  "Rather, recovery is barred when the claim alleges 'only economic

damages resulting from an alleged breach of contract.'"[62]

World Savings argues that the economic loss rule applies here because

Cunningham's "negligence claim is simply her contract claim recast under a new

name."[63]  As discussed above, however, it is unclear whether Mrs. Cunningham's

negligence claim is based on a breach of a duty which arises under contract or whether

it arises from a breach of the duty to exercise ordinary care.  While the authority cited by

World Savings supports its position that the economic loss rule would apply if

Cunningham's negligence claim arises from a breach of a contract, World Savings does

not cite, nor is the court aware of, any controlling authority that the economic loss rule

applies to a negligence claim arising from a bank's breach of the duty to exercise

---

[59]*Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995).

[60]*Carstens v. City of Phoenix*, 75 P.3d 1081, 1083 (Ariz. App. 2003).

[61]*Ares Funding, LLC v. Ma Maricopa, LLC*, 602 F. Supp. 2d 1144, 1148  (D. Ariz. 2009)
(quoting *Salt River Project v. Westinghouse Elec. Corp.,* 694 P.2d 198, 209 (1984)).

[62]*Id.* (internal quotation and citation omitted).

[63]Doc. 109 at p. 16.

ordinary care which does not arise from the parties' agreement.[64]  To the contrary, World Savings acknowledges, for example, that "the existence of a fiduciary duty gives rise to duties independent from the terms of a contract, and hence an independent tort."[65]  Because World Savings has not established that it is entitled to judgment as a matter of law, the court will deny World Savings' motion for summary judgment as to Ms. Cunningham's negligence claim.

## V.  CONCLUSION REGARDING PENDING MOTIONS

For the reasons set out above, plaintiff's motion for partial summary judgment at docket 81 is **DENIED**, defendant's motion for summary judgment at docket 90 is **DENIED**, and defendants' motions to strike at docket numbers 89 and 110 are **DENIED** as moot.

## VI.  ORDER REGARDING SETTLEMENT CONFERENCE AND TRIAL DATE

This case is one which the court believes the parties should be able to settle.  If the parties desire a settlement conference, they should notify the court in a joint notice to be filed within 7 days from the filing of this order.

If the case does not settle, the court is available to try it the week of December 7, 2009, either in Prescott or Phoenix.  Counsel are requested to confer immediately and then within 7 days from the filing of this order file a joint notice indicating if the parties are available for trial the week of December 7, 2009.  If the week of December 7, 2009,

---

[64]Cf. *Ares Funding, LLC*, 602 F. Supp. 2d at 1149 (holding that "fraud in the inducement does not arise from the parties' agreement, and thus is not barred by the economic loss doctrine").

[65]Doc. 109 at p. 16.

is not available, the parties should suggest at least two mutually agreeable dates in

2010. Finally, the notice should indicate, regardless of when the case is to be tried,

whether the parties would prefer to have the trial in Phoenix where it appears all

counsel practice, or in Prescott where the case was filed.

DATED this 18th day of September 2009.


_____
/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE